UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

_____

| In Re:<br><br>**KIM H. THOMPSON and**<br>**AMY K. THOMPSON,**<br><br>**Debtors.** | **Bankruptcy Case**<br>**No. 10-41842-JDP** |
|---|---|

_____

**MEMORANDUM OF DECISION**

_____

**Appearances:**

    Steven L. Wetzel, Idaho Falls, Idaho, Attorney for Debtors.

    Jim A. Spinner, SERVICE & SPINNER, Pocatello, Idaho, Attorney for Chapter 7 Trustee R. Sam Hopkins

**Introduction**

Chapter 7[1] debtors Kim and Amy Thompson ("Debtors") own two

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

MEMORANDUM OF DECISION - 1

life insurance policies, one insuring Kim's life, and the other insuring Amy's.[2] Each spouse claims an exemption in the policies' cash surrender value. Chapter 7 trustee R. Sam Hopkins ("Trustee") acknowledges Kim's right to exempt up to $5,000 in the policies' cash surrender value. On the other hand, he objects to Amy's claim of exemption because, he asserts, she is not the policies' "owner." A hearing on Trustee's objection was held June 21, 2011. Having considered the record, the parties' submissions, and applicable law, this Memorandum disposes of the issues raised by Trustee's objection.[3]

## Facts[4] and Procedural Background

Debtors married in 1988. On July 21, 2000, they purchased Western Reserve Life Assurance Co. of Ohio Policy Number 15-B3157749, an insurance policy on Kim's life ("WRL Policy No. 7749"). Kim is designated

---

[2] Reference to Debtors' first names is solely for the clarity of this decision; no disrespect is intended.

[3] This Memorandum constitutes the Court's findings of fact and conclusions of law. Rules 7052, 9014.

[4] Debtors and Trustee filed a stipulation of relevant facts. Dkt. No. 68.

MEMORANDUM OF DECISION - 2

in the policy as its owner.

On March 28, 2006, Debtors purchased Western Reserve Life Assurance Co. of Ohio Policy Number 50W0033951, an insurance policy on Amy's life ("WRL Policy No. 3951"). The parties agree that Kim is also that policy's listed owner.

The premiums for both policies have been paid from Debtors' joint bank account.

On October 14, 2010, Debtors filed a chapter 7 bankruptcy petition. Dkt. No. 1. Initially, Debtors included both policies in their schedules, assigning a value of $2,000 to each on Schedule B, and claiming a $2,000 Idaho Code § 11-605(10) exemption in each on Schedule C. *Id.* However, a January 10, 2011, policy summary indicated WRL Policy No. 7749 had a cash surrender value of $3,335.54, and WRL Policy No. 3951 had a cash surrender value of $3,012.71. Exh. 103. On February 17, 2011, Debtors amended Schedule B to reflect the increased values, and increased their Schedule C Idaho Code § 11-605(10) claimed exemption to $5,000 in each policy. Dkt. No. 27.

MEMORANDUM OF DECISION - 3

Trustee objected to Debtors' amended claims of exemption. Dkt. No. 30. He asserts that Kim, as the contractual owner of the policies, is the only debtor entitled to an exemption under Idaho Code § 11-605(10), and is limited to a combined exemption of $5,000 in both policies. *Id.* Essentially, Trustee argues that, per the contracts' terms, Western Reserve Life would not recognize a request by Amy, alone, to change the policies' beneficiary or to withdraw cash surrender value, and, therefore, she is not the policies' owner. Thus, per Trustee, Amy may not exempt the $1,348.24 in the policies' cash surrender value beyond Kim's exemption. *Id.*

Debtors argue that Amy is an owner of the policies pursuant to Idaho's community property laws, and, as such, may claim the exemption.

**Discussion**

When a bankruptcy petition is filed, a bankruptcy estate is created, which includes all of debtors' legal or equitable interests in property. § 541(a)(1). Debtors may attempt to reclaim interests in certain property by claiming it as exempt. *Schwab v. Reilly*, __ U.S. __, 130 S.Ct. 2652, 2663–64 (2010). If no interested party objects to debtors' claimed

MEMORANDUM OF DECISION - 4

exemptions, the property becomes exempt. § 522(l); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992). Debtors' potential exemptions are found in § 522, which, in addition to providing a federal exemption scheme, allows states to "opt out" of the federal scheme and, instead, limit a debtor's exemptions to those authorized by state law. § 522(b)(1). Idaho has opted out of the federal scheme. Idaho Code § 11-609.

Among Idaho's exemptions is one protecting:

> [a]n individual's aggregate interest, not to exceed five thousand dollars ($5,000) in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the individual under which the insured is the individual or a person of whom the individual is a dependent.

Idaho Code § 11-605(10). Thus, an exemption is available in a life insurance policy's cash surrender value if the policy (1) is "owned" by the debtor claiming the exemption and (2) insures either the debtor or a person of whom the debtor is a dependent. *Id.*

Here, WRL Policy No. 3951 insures Amy's life. Therefore, if she owns that policy for purposes of Idaho Code § 11-605(10), she may claim

MEMORANDUM OF DECISION - 5

an exemption in up to $5,000 in its cash surrender value. Also, Trustee concedes Kim and Amy are one another's dependents. Because WRL Policy No. 7749 insures Kim, and Amy is Kim's dependent, she may also claim an exemption in that policy's cash surrender value, if she owns the policy. The parties agree Amy is not a contractually listed owner of the policies. Therefore, if she has an ownership interest in the policies, it must spring from another source.

Recently, this Court addressed the meaning of "owned" within the context of Idaho Code § 11-605(10). *See In re Steiner*, 10.4 I.B.C.R. 106, 109–10 (Bankr. D. Idaho 2010). As in *Steiner*, Trustee here argues ownership is a term of art in the insurance context, and, for purposes of Idaho Code § 11-605(10), a party cannot be a policy's owner unless so indicated in the insurance contract. *Id.* at 109. Debtors, as did the debtors in *Steiner*, assert that ownership derived through Idaho's community property law is sufficient for the purposes of Idaho Code § 11-605(10). *Id.*

In *Steiner*, this Court concluded that community property law

MEMORANDUM OF DECISION - 6

determines the nature of life insurance policy ownership in Idaho.[5] *Id.* at 109–10. Because the facts in this case are somewhat different from those in *Steiner*, and to clarify the life insurance policy ownership analysis, this decision again addresses the concept of ownership under Idaho Code § 11-605(10).

1. <u>Amy's ownership of WRL Policy No. 3951 is determined by Idaho's community property laws</u>.

In interpreting an Idaho statute, terms are to be given their ordinary and commonly understood meaning, unless a term has a technical or scientific meaning. *In re Duman*, 00.3 I.B.C.R. 137, 137 (Bankr. D. Idaho 2000). In *Steiner*, this Court cited *Fireman's Fund Ins. Co. v. Woodson* (*In re Woodson*), 839 F.2d 610 (9th Cir. 1988), which states that life insurance policy ownership is limited to "the 'right to maintain the policy and name a beneficiary.'" *In re Steiner*, 10.4 I.B.C.R. at 109 (quoting *In re Woodson*, 839

---

[5] Trustee asserts the community property discussion in *Steiner* was superfluous to the Court's decision, and was, therefore, *dicta*. The Court disagrees; the discussion of community property principles was necessary to understand why the life insurance policy in *Steiner* was separate property, and not the presumptive community property of the Debtors.

MEMORANDUM OF DECISION - 7

F.2d at 618). That definition was utilized in *Woodson*, however, to compare policy ownership rights to the right to policy proceeds as a beneficiary. 839 F.2d at 617–19. The Ninth Circuit did not consider the impact of community property law on life insurance policy ownership in that decision. *Id.* Had it done so, it likely would have come to a broader, or at least different, definition of life insurance policy ownership. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001) (identifying impact of California community property law on life insurance, which is that, where a life insurance policy is paid for with community funds, it is community property; and, any change in beneficiary by a listed owner, without his spouse's consent, is voidable); *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 985 (9th Cir. 1999) (same); *Emard v. Hughes Aircraft Co.*, 153 F.3d 949, 955–56 (9th Cir. 1998) (same); *Life Ins. Co. of N. Am. v. Cassidy*, 676 P.2d 1050, 1053 (Cal. 1984) (developing and restating California community property law as to life insurance policies); *Benson v. City of Los Angeles*, 384 P.2d 649, 653 (Cal. 1963) (same); *Tyre v. Aetna Life Ins. Co.*, 353 P.2d 725, 727–28 (Cal. 1960) (same); *Grimm v. Grimm*, 157 P.2d

MEMORANDUM OF DECISION - 8

841, 842 (Cal. 1945) (same); *Travelers' Ins. Co. of Hartford Conn. v. Fancher*, 26 P.2d 482, 483 (Cal. 1933) (same); *Dixon Lumber Co. v. Peacock*, 19 P.2d 233, 234 (Cal. 1933) (same).

WRL Policy Nos. 3951 and 7749 expressly define each policy's contractual "owner," and identify the rights inherent in ownership status. Exh. 102, 105. Also, as is typical, Western Reserve Life's change of beneficiary form limits the ability to change a beneficiary to a policy's listed owner.[6] *See* Exh. 104. Trustee, therefore, asserts that ownership, at least in the contract-driven world of life insurance, must have a technical meaning, and be limited to a policy's listed owner. *See* Trustee's Brief at 3–4, Dkt. No. 66.

Not only did the description in *Woodson* not address community property implications, however, it also does not, on its face, incorporate a

---

[6] The change of beneficiary form also includes the following clause:

Please Note: If you reside(d) in one of the following community property jurisdictions (AZ, CA, ID, LA, NM, NV, TX, WA, WI, Puerto Rico and Guam), you may wish to consult with your legal or tax advisor prior to making changes to your policy.

MEMORANDUM OF DECISION - 9

technical meaning into the concept of policy ownership, *i.e.*, it does not necessarily limit policy ownership to the individual named as "owner" in a life insurance contract.[7] The inquiry into property ownership does not end simply by looking at a specific contract's language. To determine who owns property in the bankruptcy context, including life insurance policies, the Court must look to state law. *See Butner v. United* States, 440 U.S. 48, 54 (1979); *In re Steiner*, 10.4 I.B.C.R. at 109 (citing *In re Martell*, 349 B.R. 233, 235–36 (Bankr. D. Idaho 2005) ("To determine the nature and extent of a debtor's interest in specific property . . . the Court looks to state law."). True to this charge, then, this decision looks beyond the *Woodson* definition, and examines the impact of community property law, specifically Idaho's, on life insurance policy ownership.

2. <u>Under Idaho's community property laws, Amy has an ownership interest in WRL Policy Nos. 3951 and 7749</u>.

Idaho is a community property state. *See* Idaho Code §§ 32-901 to

---

[7] To the contrary, *Woodson* indicates that anyone with the right to manage or control a policy is its owner. *See In re Woodson*, 839 F.2d at 618.

MEMORANDUM OF DECISION - 10

32-929. Under Idaho's community property regime, whether property is community or separate depends on the property's date of acquisition and the nature of funds used to acquire the property. *Banner Life Ins. Co. v. Mark Wallace Dixson Irrevocable Trust*, 206 P.3d 481, 488 (Idaho 2009). Property acquired after marriage or with community property funds, including non-term life insurance policies,[8] is characterized as community property. *See Banner Life Ins. Co.*, 206 P.3d at 488 (citing *Travelers Ins. Co. v. Johnson*, 544 P.2d 294, 298 (Idaho 1975); *Anderson v. Idaho Mut. Benefit Ass'n*, 292 P.2d 760, 762 (1956)).

Debtors purchased WRL Policy No. 7749 on July 21, 2000, and WRL Policy No. 3951 on March 28, 2006, well after their 1988 marriage. The policies' premium payments were all made from community property

---

[8] Term life insurance policies require a somewhat modified analysis. *See Banner Life Ins. Co.*, 206 P.3d at 488–89. Instead of looking to the date of acquisition, term life insurance policies are characterized based on the couple's marital status on the date of the last premium payment, and the character of the funds used to make that payment. *Id.*

MEMORANDUM OF DECISION - 11

funds.[9]  WRL Policy Nos. 7749 and 3951 are, therefore, community property, which distinguishes this case from the ownership interest analyzed in *Steiner*.[10]

Amy's community property ownership in WRL Policy Nos. 3951 and 7749 has important implications on the policies' contract rights, including the right to designate the policies' beneficiary.  Typically, individuals are granted great freedom to enter life insurance contracts and to name the contracts' beneficiaries.  *See Johnson*, 544 P.2d at 296.  Difficulty arises, however, when the listed owner of a community property policy attempts to designate an individual other than his spouse as the policy's beneficiary.  *Id.*

---

[9]  Property held by a married couple is presumed to be community property.  *See In re Martell*, 349 B.R. at 236.  No evidence was presented rebutting the presumption that the couple's funds were community property.

[10]  In *Steiner*, the policy was the husband's separate property before his marriage, and its character was never transmuted to community property after his marriage.  *See In re Steiner*, 10.4 I.B.C.R. at 109.  Because the policy was the husband's separate property, any post-marital community property payments toward the policy's premiums only entitled the non-listed wife to a right of reimbursement for those payments.  *Id.*

MEMORANDUM OF DECISION - 12

In Idaho, spouses are both given the right to manage and control community property. *In re Martell*, 349 B.R. at 236. As a result, if one spouse attempts to change a community property life insurance policy's beneficiary without receiving consideration for the change, it is regarded as a gift of community property. *Banner Life Ins. Co.*, 106 P.3d at 492–93; *United Investors Life Ins. Co. v. Severson*, 151 P.3d 824, 828 (Idaho 2007); *Johnson*, 544 P.2d at 297–98; *Anderson v. Idaho Mutual Benefit Ass'n*, 292 P.2d 760, 762 (Idaho 1956). A non-consenting, non-listed spouse may void a change in beneficiary in the entirety during the listed owner's life, and as to her one-half community property interest in the policy after the listed owner's death. *Banner Life Ins. Co.*, 206 P.3d at 493. In other words, a listed owner may not effectually change a community property policy's beneficiary without the consent of the non-listed spouse.

In spite of life insurance policy language restricting certain rights and abilities to a contract's listed owner, Idaho community property law gives a non-listed spouse the right to manage and control the policy. *See Banner Life Ins. Co.*, 206 P.3d at 493; *Anderson*, 292 P.2d at 764. Though

MEMORANDUM OF DECISION - 13

Amy is not WRL Policy Nos. 3951 and 7749's listed owner, she is the policies' owner as a result of Idaho's community property laws, and may claim an exemption in the policies' cash surrender value pursuant to Idaho Code § 11-605(10).[11]

## Conclusion

Under Idaho's community property laws, Amy owns WRL Policy Nos. 3951 and 7749. She is the individual insured under WRL Policy No. 3951, and her husband, on whom she is dependent, is insured under WRL Policy No. 7749. Therefore, Amy may claim an Idaho Code § 11-605(10) exemption in both policies' cash surrender value.

A separate order overruling Trustee's objection to Debtors' claim of exemptions will be entered.

///

///

---

[11] To be clear, while Trustee argues Amy is not an owner in the policies because the contracts do not allow her, by herself, to request withdrawal of the policies' cash surrender value, Idaho Code § 11-605(10) does not protect the right to request such withdrawal. Rather, the exemption protects the policy owner's aggregate interest in the cash surrender value itself.

MEMORANDUM OF DECISION - 14

Dated: July 11, 2011

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 15